FILED
JUL -5 2013
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | |
|---|---|
| DARCHELL Y. WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 4:12-cv-107 |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner, ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The Plaintiff, Darchell Williams ("Williams"), brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Defendant, the Acting Commissioner of the Social Security Administration ("Acting Commissioner"), denying Williams's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") disability payments pursuant to Titles II and XVI of the Social Security Act.

This action was referred to the undersigned U.S. Magistrate Judge pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges. For the following reasons, the undersigned **RECOMMENDS** that Williams's Motion for Summary Judgment, ECF No. 10, be **GRANTED** to the extent it seeks reversal and remand of the Acting Commissioner's decision; the Defendant's Motion for Summary Judgment, ECF No. 13, be **DENIED**; and the final decision of the Acting Commissioner be **VACATED** and

**REMANDED** for proceedings and analysis consistent with this Report.

## I. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

On February 26, 2009,[1] Williams filed an application with the Social Security Administration ("SSA") for DIB and SSI disability payments. R. 173-80.[2] In her claim, Williams alleged disability beginning June 1, 2007, caused by psychiatric problems, specifically bipolar disorder, a personality disorder, mood swings, affective psychosis, an "overanxious" disorder, a depressive disorder, a learning disability, attention deficit hyperactivity disorder ("ADHD"), and back problems. R. 228. Williams's application was initially denied on May 12, 2009, R. 114-26, and, upon reconsideration, denied again on September 11, 2009, R. 141-47. Williams, then, requested a hearing before an Administrative Law Judge ("ALJ") of the SSA, R. 154, which was held on July 20, 2010, R. 29-54. Williams testified and was represented by counsel at the hearing. *Id.* The ALJ denied Williams's application and issued an opinion to this effect on August 2, 2010. R. 10-22. In evaluating Williams's disability claim, the ALJ followed the five-step sequential analysis pursuant to 20 C.F.R. §§ 404.1520(a) and 416.920(a), considering whether Williams: (1) was engaged in substantial gainful activity, R. 15; (2) had a severe impairment, R. 16; (3) had an impairment that meets or medically equals a condition within the SSA's listing of impairments, R. 16-17; (4) had an impairment that prevents past

---

[1] Both Williams, ECF No. 9 at 4, and the Acting Commissioner, ECF No. 14 at 2, record February 5, 2009, as the date Williams filed with the SSA for DIB and SSI disability payments. However, the undersigned uses February 26, 2009, as Williams's filing date because of what the SSA stated in its summary of Williams's application. *See* R. 173 ("On February 26, 2009, we [the SSA] talked with you [Williams] and completed your application for Social Security Benefits."). In support of the February 5, 2009 filing date, the Acting Commissioner cites to the same record page stating February, 26, 2009 was the filing date, and Williams provides no record citation for her alleged filing date. Additionally, Williams's Disability Report, Form SSA-3368, is not dated. R. 227-34. Use of the later filing date does not affect Williams's claims because the statute of limitations began to run after the final decision of the Acting Commissioner. *See* 42 U.S.C. § 405(g). Accordingly, the undersigned deems February 26, 2009, as the date Williams filed with the SSA.

[2] "R." refers to the certified administrative record that was filed under seal on September 24, 2012, pursuant to Local Civil Rules 5(B) and 7(C)(1).

relevant work, R. 21; and (5) had an impairment that prevents her from any substantial gainful employment, R. 21-22.

Specifically, the ALJ found that Williams had not engaged in substantial gainful activity since June 1, 2007, after she was fired from her job working part-time as a housekeeper. R. 16. Second, he found that Williams suffered from the following severe impairments: obesity, mood disorders, and personality disorder. *Id.* Third, he found that although Williams had a severe impairment, she did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* The ALJ relied on the "State agency psychological consultant[s' finding] that [Williams's] mental impairments, considered singly and in combination, along with the effects of obesity, d[id] not meet or medically equal the criteria." R. 17. Finally, the ALJ determined that Williams had the residual functional capacity ("RFC") to perform medium work; though, she was limited to tasks not involving frequent interaction with coworkers and the general public. R. 20-21. In support of this conclusion, the ALJ gave great weight to the State Agency Consultants' opinions concluding that Williams was not disabled, R. 19, and he attributed little weight to Williams's treating mental health therapist's, Ms. Phyllis Pugh ("Ms. Pugh"), opinion that Williams was disabled, R. 21. Specifically, the ALJ discounted Ms. Pugh's opinion because he believed that "Ms. Pugh ha[d] not had the opportunity to personally observe or treat the claimant, and it appear[ed] as though her opinions [were] based largely upon [Williams's] reports and subjective complaints, rather than on the findings and observations of her therapist," *Id.* However, the ALJ's conclusion in this regard is erroneous. Ms. Pugh was, in fact, a treating therapist for Williams, and the record is replete with treatment notes from Ms. Pugh's personal therapy

3

sessions with Williams. R. 325-26, 329-30, 331-32, 336-39, 342-43, 346-47, 349-52, 354-57, 364-66, 422-32.

In determining Williams's RFC, the ALJ also analyzed Williams's credibility regarding statements made "about the intensity, persistence or functionally limiting effects of pain or other symptoms . . . not substantiated by objective medical evidence." R. 18. Although the ALJ addressed Williams's reports that "she is unable to comprehend writing instructions," "has short-term memory loss," "has 'crazy-thoughts,'" and "cries excessively," he ultimately rejected Williams's credibility "to the extent [that her statements] were inconsistent" with the RFC determination and the evidence. R. 18-19. Conversely, the ALJ found Williams's mother's testimony that Williams had a "history of aggressive behavior and inability to get along with others," was unable to "get along with people," and generally disliked "being around family members" to be credible. R. 19-20. In support of his decision, the ALJ cited records from Williams's psychiatrist, Joselito Morales, MD, who reported multiple times that Williams's mental health was improving. R. 20. He also noted the absence of any hospitalization for physical or mental impairments, Williams's regular participation in scheduled therapy, and her medication management for her impairments. *Id.*

The Appeals Council denied Williams's petition for appeal on April 30, 2012, R. 1-3. On July 5, 2012, Williams brought the instant action seeking judicial review of the Acting Commissioner's decision to deny her claim for DIB and SSI. ECF No. 3. The Defendant filed an Answer on September 24, 2012. ECF No. 6. Williams filed a Motion for Summary Judgment with a memorandum in support on December 21, 2012, ECF No. 9-10, and the Defendant filed a Motion for Summary Judgment with a memorandum in support and in opposition to Williams's

Motion on February 7, 2013, ECF No. 13-14. Because Williams did not file a response to the Defendant's Motion for Summary Judgment or a reply in support of her own Motion, and the time to do so has lapsed, both Motions are ripe for disposition.

In her Motion for Summary Judgment, Williams raises a number of objections to the ALJ's decision. Specifically, Williams alleges: (1) the ALJ erred by attributing improper weight to the opinion of her treating therapist, Ms. Pugh; (2) the ALJ erred by giving improper weight to the State Agency Consultants' opinions; and (3) the ALJ erred in failing to make proper credibility finds as to Williams's testimony. ECF No. 9 at 5.

## II. STANDARD OF REVIEW

Under the Social Security Act, the Court's review of the Commissioner's final decision is limited to determining whether the Commissioner's decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

In determining whether the Commissioner's decision is supported by substantial evidence, the Court does not "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [Commissioner]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for the decision falls on the [Commissioner] (or the [Commissioner's] delegate, the ALJ)." *Id.* (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th

Cir. 1987)). Accordingly, if the Commissioner's denial of benefits is supported by substantial evidence and applies the correct legal standard, the Court must affirm the Commissioner's final decision. *Hays*, 907 F.2d at 1456.

### III. ANALYSIS

#### A. Weight of Treating Therapist

Williams claims that the ALJ erred in attributing "little weight to the medical source statement of Ms. Pugh." ECF. No. 9 at 15. Ms. Pugh is a licensed professional counselor, R. 341, who conducted eighteen therapy sessions with Williams from September 8, 2008 to August 9, 2010, ECF No. 9 at 16, and submitted a written opinion that Williams was disabled, R. 341. Williams argues that the ALJ wrongly assigned little weight to Ms. Pugh's opinion due to a mistaken assumption that Ms. Pugh had never personally observed or treated Williams; furthermore, she argues that the record supports Ms. Pugh's opinion that Williams was disabled. ECF No. 9 at 15-16 (citing R. 21) (ALJ gave "little weight to the medical source opinions of Phyllis Pugh, LPC [because] Ms. Pugh has not had the opportunity to personally observe or treat the claimant"). The undersigned finds that although the ALJ was not required to assign any evidentiary weight to Ms. Pugh's opinion, this case should be remanded on this claim because the ALJ cannot assign evidentiary weight based on an incorrect material factual premise.[3]

Preliminarily, Williams must overcome a substantial barrier to her claim since not all forms or sources of evidence are permitted, or even required, to establish a claim for disability. The Regulations provide that the ALJ "need[s] evidence from *acceptable* medical sources to

---

[3] The undersigned recommends that the Court decline to review at this time whether Ms. Pugh's opinion is supported by the record because this factor should be addressed by the ALJ in reconsidering Ms. Pugh's opinion in light of the correct facts, specifically that Ms. Pugh personally treated Williams. *See* SSR 06-03p, 2006 WL 2329939, at *4 (Aug. 9, 2006) (listing consistency with other evidence as a factor to be analyzed when considering evidence from other sources).

6

establish whether [the claimant has] a medically determinable impairment(s)." 20 C.F.R. § 404.1513(a) (emphasis added). Acceptable medical sources include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech language pathologists. *Id.* § 404.1513(a)(1)-(5). In addition to acceptable medical sources, the ALJ "*may* use evidence from other sources to show the severity of [the claimant's] impairment(s) and how it affects [the claimant's] ability to work." *Id.* § 404.1513(d) (emphasis added). Ms. Pugh, as a licensed mental health therapist, is an "other source," or nonacceptable source. *Id.* § 404.1513(d)(1) (listing "therapist" as a nonacceptable source.). Furthermore, although an ALJ must consider all evidence in the record, he is only required to explicitly assign evidentiary weight to medical opinions including "statements from physicians and psychologists or other *acceptable medical sources* that reflect judgments about the nature and severity of [one's] impairments, . . . what [one] can still do despite impairment(s), and [one's] physical and mental restrictions." *Id.* § 404.1527(a)(2) (emphasis added). Accordingly, although the ALJ was required to consider Ms. Pugh's opinion as an unacceptable medical source, he was not required to assign any particular evidentiary weight to Ms. Pugh's treatment notes or her opinion that Williams is disabled.

Indeed, this Court addressed a similar question in *Smith v. Commissioner of Social Security*, No. 4:09cv80, 2010 WL 1640271 (E.D. Va. April 22, 2010), holding that SSR 06-03p's directive that "the adjudicator generally should explain the weight given to opinions from . . . 'other sources,'" 2006 WL 2329939, at *6, was simply an "encourage[ment] [to] ALJ's to evaluate each opinion" but was not a requirement, *Smith*, 2010 WL 1640271, at *4. This Court further noted the distinction "between what an adjudicator must *consider* and what the

7

adjudicator must *explain* in the disability determination or decision," SSR 06-03p, 2006 WL 2329939, at *6 (emphasis added), in determining that an ALJ's assignment of evidentiary weight to nonacceptable sources is "permissive rather than mandatory," *Smith*, 2010 WL 1640271, at *3. This decision distinguished the dividing line between sources that an ALJ was required to consider and sources that the ALJ was required to assign evidentiary weight to in the disability decision; nonacceptable sources fall clearly on the side of consideration only. *Id.*

Notwithstanding the fact that the ALJ was not required to assign evidentiary weight to Ms. Pugh's opinion, the undersigned finds it necessary to recommend remand because the ALJ assigned weight based on a patently mistaken material factual assumption—an error memorialized in the ALJ's opinion. R. 21. The ALJ cannot reject evidence for a "wrong reason" or an "improper" reason. *See v. Wash. Metro. Area Transit Auth.*, 36 F.3d 375, 384 (4th Cir. 1994). Accordingly, the ALJ erred when he assigned little weight to Ms. Pugh's opinion based on the wrong reason: he believed that Ms. Pugh had never personally treated Williams. R. 21. Even the Acting Commissioner concedes the ALJ's error, though, she claims the error was harmless. ECF No. 14 at 20. The Acting Commissioner cites one case in support her argument that "[t]his error is harmless because the remainder of the ALJ's analysis sustains the ALJ's determination that Ms. Pugh's opinion(s) was not entitled to probative weight." ECF No. 14 at 20 n.5 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004), quoting *NLRB v. Wyman-Gordon*, 394 U.S. 759, 766 n.6 (1969)). However, this Sixth Circuit case does not compel a finding of harmless error because, in actuality, this case stands for the opposite conclusion proposed by the Acting Commissioner. The *Wilson* Court held that a court may *not* excuse a procedural error (in Williams's case: assigning an improper reason for evidentiary

weight) "simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely." *Wilson*, 378 F.3d at 546. To do so, would "render the protections promised [in the Regulations] illusory." *Id.*

Similarly, in reviewing a denial of workers' compensation benefits, the Fourth Circuit remanded an ALJ's decision because he based his decision on a wrong factual assumption, and it was not clear that he would have reached the same result had his error been corrected. *Pettit v. Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor*, No. 94-1927, 1995 WL 82510, at *3 (4th Cir. Feb. 23, 1995). This action is necessary when "the record obviously does not support the basis *chosen* by the ALJ" though the "record may contain a basis for the ALJ's ultimate decision." *Id.* (emphasis added) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 95 (1943); *King v. Caligano*, 615 F.2d 1018, 1020 (4th Cir. 1980) (remanding for proper consideration of the evidence because "even if legitimate reasons exist for rejecting or discounting certain evidence, the Secretary cannot do so for no reason or for the wrong reason")). In *Pettit*, much of the ALJ's rationale was erroneously based on incorrect factual assumptions, but the defendant still argued that the record in its entirety supported the ultimate decision of the ALJ. *Id.* Nevertheless, the Fourth Circuit reversed and remanded the case because "it [was] not clear the ALJ would have reached the same ultimate result" had the ALJ based his decision on legitimate reasons. *Id.* Such is the case here. Though the ALJ could have decided not to assign weight to Ms. Pugh's opinion because it was an unacceptable source, or he could have assigned little weight for a reason supported by the record, he erred by considering Ms. Pugh's opinion while guided by incorrect facts. *See, e.g., Lanza v. Astrue*, No. 08-301, 2009 WL 1147911, at *7

(W.D. Pa. Apr. 28, 2009) (remanding, in part, because the ALJ "misread" a nonacceptable medical source's opinion). The ALJ's error evinces a misunderstanding of the factual record—a flaw inherent to the ALJ's very consideration of Ms. Pugh's opinion. Thus, the undersigned recommends that this case be remanded with the instruction to consider Ms. Pugh's opinion in light of the correct facts, specifically, that Ms. Pugh did personally treat Williams.

## B. Weight of State Agency Consultants' Opinions

Williams asserts that the ALJ erred by attributing improper weight to the State Agency Consultants' opinions because the Consultants' reports were allegedly not signed and were not supported by substantial evidence in the record. ECF No. 9 at 17. The undersigned rejects Williams's first claim regarding the consultants' signatures as meritless and declines to decide the second claim, whether the opinions were supported by substantial evidence, because it is dependent on the ALJ's reconsideration of Ms. Pugh's opinion. The undersigned finds that Williams's first claim is without merit for two reasons: first, the contested opinions were not consultative examinations as Williams asserts, and second, the consultative opinions were electronically signed in accordance with SSR 96-06p and 96-10p. In support of her claim, Williams cites to one case, *Scott v. Shalala*, 898 F. Supp. 1238, 1251 (N.D. Ill. 1995), and 20 C.F.R. § 404.1519, stating that "[t]he ALJ cannot rely on an unsigned medical report from a consultative physician." ECF No. 9 at 18. Although Williams is correct in her assertion that 20 C.F.R. § 404.1519o(b) requires consultative examinations to be signed, she fails to realize that no consultative examinations are present in her case. Williams does not distinguish between a consultative *opinion* and a consultative *examination*; the latter of which is a "physical or mental examination or test purchased for" the claimant by the SSA and requires a signature. 20 C.F.R.

§§ 404.1519, 404.1519o(b). Indeed, a careful reading of the record indicates that not only were no consultative examinations performed for Williams, but the State Agency Consultants explicitly stated that no consultative examinations were needed in Williams's case. R. 89, 102. Furthermore, the case law Williams cites only supports the assertion that consultative examinations must be signed, not opinions. *Scott*, 898 F. Supp. at 1251.

Notwithstanding the fact that the Consultants' opinions were not examinations, and thus did not need signatures under 20 C.F.R. § 404.1519o(b), the opinions were signed electronically. Williams seems to be operating under the assumption that the signature requirement allows only a handwritten signature to verify an opinion. However, this understanding is incorrect. The SSA provides that State Agency Consultative opinions may be signed electronically. SSR 96-10p, 1996 WL 743753, at *3 (Dec. 30, 1996) ("It is the policy of the SSA that information for which SSA requires a signature may be signed using SSA-approved signature methods including handwritten, electronic, or digital methods.") All consultative opinions in Williams's case were signed electronically. R. 68, 82, 97, 110. Furthermore, the Disability Determination and Transmittal Forms were signed electronically, R. 83, 111, to "ensure[] that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review," SSR 96-06p, 1996 WL 374180, at *3 (July 2, 1996).

Williams also argues that the ALJ erred in assigning "great weight" to the State Agency Consultants' opinions, R. 19, because the Consultants allegedly stated the facts inaccurately and their opinions were not supported by substantial evidence in the record, ECF No. 9 at 19. In reaching the conclusion that Williams had the RFC to perform medium work, the ALJ

considered the objective medical evidence in the record, the treatment notes from Williams's psychologist and therapist, the State Agency Consultants' opinions, Williams's testimony, Williams's mother's testimony, and an affidavit submitted by Williams's sister. R. 18-21. In doing so, the ALJ gave great, but not controlling, weight to the opinions of the State Agency Consultants. R. 19.

Having reviewed the entire administrative record, the undersigned declines to review this claim because the weight assigned to the State Agency Consultants' opinions may change if the ALJ assigns new weight to Ms. Pugh's opinion. Under the Regulations, an ALJ may assign more weight to an unacceptable medical source, such as Ms. Pugh's opinion, and less weight to acceptable medical sources like the State Agency Consultants' opinions. *See* SSR 96-03p, 2006 WL 2329939, at *5 ("[D]epending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an 'acceptable medical source' if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion."). Accordingly, the undersigned declines to review the weight assigned to the State Agency Consultants' opinions because the ALJ may choose to re-assign weight to the State Agency Consultants' opinions after reconsidering Ms. Pugh's opinion.

*C. Williams's Credibility*

Williams asserts that the ALJ erred in finding her testimony concerning her symptoms

and their effect on her was not credible. R. 20. In addressing Williams's testimony that she could not work, the ALJ concluded that Williams's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Williams's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent" with the RFC assessment as based on the medical record. R. 19. The undersigned declines to review this claim because the credibility determination was based, in part, on the ALJ's misinterpretation of the medical record premised on his faulty assumption that Ms. Pugh had not personally treated Williams. R. 21. As a result, the ALJ's credibility determination may change upon his reconsideration of Ms. Pugh's opinion.

The Court must defer to the ALJ's credibility determinations and will only address whether substantial evidence supports the decision, not re-make credibility determinations. *Craig*, 76 F.3d at 589. The ALJ utilizes a two-step process in evaluating a claimant's subjective complaints regarding her impairments: (1) he determines whether there is objective medical evidence showing the existence of "a medically determinable impairment(s) that could reasonably be expected to produce [the] symptoms," and (2) if there is such evidence, he "evaluate[s] the intensity and persistence of [the claimant's] symptoms [in order to] determine how [the] symptoms limit [the claimant's] capacity for work." 20 C.F.R. § 404.1529(c)(1). Furthermore, in evaluating the second step, the ALJ must make a credibility determination "whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence." SSR 96-07p, 1996 WL 374186, at *2 (July 2, 1996). The ALJ must consider not only the internal consistency in the claimant's statements, but also the consistency between the claimant's

13

statements and the medical evidence in the record. *Id.* at *5. If the ALJ determines that the claimant's statements are not credible, he must explain his reasoning. *See id.* at *2 ("It is not sufficient to make a conclusory statement that 'the [claimant's] allegations have been considered' or that 'the allegations are (or are not credible)'. . . . The determination or decision must contain specific reasons for the finding on credibility.")

In her claim, Williams avers that her "statements regarding her condition and limitations have been consistent in describing them in her Function Reports and reporting them to Dr. Morales and Ms. Pugh for the purpose of treatment." ECF No. 9 at 21. Additionally, she argues that her statements are not inconsistent with the observations of her physician, psychologist, therapist, and psychological evaluation. *Id.* In addressing the consistency between Williams's statements and the record, the ALJ noted that Williams's treatment for her impairments was "very routine" in nature, and she was not hospitalized for either a physical or mental impairment. R. 20. Furthermore, the ALJ stated that the record indicated that medication improved Williams's symptoms. *Id.* The ALJ addressed the State Agency Consultants' opinions, Williams's psychiatrist's treatment notes, the testimony of Williams's mother, an affidavit submitted by Williams's sister, and Williams's own testimony in analyzing whether Williams's testimony was credible. R. 18-20.

Although the ALJ did consider the evidence in his credibility determination, he did not *correctly* consider all of the evidence. Notably absent from his consideration of the evidence was a factually correct understanding of Ms. Pugh's opinion; an opinion which substantially supported Williams's assertion of disability. R. 341 (Ms. Pugh stated that "Williams is unable to work and to interact with numerous people at this time."). Indeed, after making his credibility

14

determination, the ALJ stated that "[i]n making the above findings, the undersigned gives little weight to the medical source opinions of Phyllis Pugh, LPC. . . . [because] Ms. Pugh has not had the opportunity to personally observe or treat the claimant." R. 21. In fact, Ms. Pugh personally treated Williams eighteen times over a two-year period. R. 325-26, 329-30, 331-32, 336-39, 342-43, 346-47, 349-52, 354-57, 364-66, 422-32. In light of the apparent factual misunderstanding, the Court cannot say that the ALJ correctly considered all of the evidence while making his credibility determination because his incorrect assumption about Ms. Pugh's opinion is clear from the record. Thus, the Court declines to review whether there is substantial evidence to support the ALJ's credibility determination because this determination may change during the ALJ's reconsideration of Ms. Pugh's opinion.

## IV. RECOMMENDATION

For the following reasons, the undersigned **RECOMMENDS** that Williams's Motion for Summary Judgment, ECF No. 10, be **GRANTED** to the extent it seeks reversal and remand of the Acting Commissioner's decision; the Defendant's Motion for Summary Judgment, ECF No. 13, be **DENIED**; and the final decision of the Acting Commissioner be **VACATED** and **REMANDED** for proceedings and analysis consistent with this Report.

## V. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil

Procedure Rule 6(a) plus three days permitted by Federal Rule of Civil Procedure Rule 6(d). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to amend the Defendant's name in the caption of the case to read, "Carolyn W. Colvin, Acting Commissioner, Social Security Administration," and is further **DIRECTED** to forward a copy of this Report and Recommendation to all counsel of record.

/s/ Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
July 5, 2013

# CLERK'S MAILING CERTIFICATE

A copy of this Report and Recommendation was mailed on this date to the following:

Barbara Jean Evans-Yosief
Evans-Yosief Law Firm
1517 Hardy Cash Dr
Hampton, Virginia 23666
Counsel for the Plaintiff

Kent Pendleton Porter
United States Attorney Office
101 Wes Main Street, Suite 8000
Norfolk, Virginia 23510
Counsel for the Defendant

 

_____
Fernando Galindo
Clerk of the Court

By:
    Deputy Clerk
    July \_\_\_\_, 2013